United States District Court
Middle District of Florida
Tampa Division

**JUDITH BEARD,**

 *Plaintiff,*

v.               NO. 8:17-cv-2940-T-PDB

**COMMISSIONER OF SOCIAL SECURITY,**

 *Defendant.*

# Order

  Judith Beard brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security denying her claims for benefits. Under review is a decision by an Administrative Law Judge ("ALJ") dated November 1, 2016. Tr. 20–30. The alleged onset date is June 2, 2014. Tr. 20. Summaries of the law and administrative record are in the ALJ's decision, Tr. 20–30, and the parties' briefs, Docs. 16, 19, 22, and not fully repeated here.

  The ALJ found Beard has severe impairments of affective disorder, bipolar disorder, and anxiety disorder, and nonsevere impairments of scoliosis, hypertension, and high cholesterol. Tr. 23. The ALJ found Beard has the residual functional capacity ("RFC") to perform work at all exertional levels except she can perform only unskilled jobs with a specific vocational preparation ("SVP") of 1 or 2, she can only occasionally interact with others, and she can handle only occasional changes in the work setting. Tr. 25. Considering the RFC and other factors, the ALJ found Beard can perform jobs such as housekeeper, janitor, and packager. Tr. 29.

  A court reviews an ALJ's factual findings for substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance"; it is "such relevant

evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). A court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the ALJ's judgment. *Id.* If substantial evidence supports an ALJ's decision, a court must affirm, even if other evidence preponderates against the factual findings. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "This restrictive standard of review applies only to findings of fact"; "no similar presumption of validity attaches to … conclusions of law, including determination of the proper standard to be applied in reviewing claims." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoted authority omitted).

Beard presents four arguments.

First, Beard argues substantial evidence does not support the ALJ's findings that her spinal impairments are nonsevere and warrant no limitations in the RFC. Doc. 16 at 16–21; Doc. 22 at 1–2.

A severe impairment is an impairment that significantly limits a claimant's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1521(a) (1985), 416.921(a) (1991) (defining nonsevere impairment). Basic work activities are the abilities and aptitudes necessary to do most jobs. 20 C.F.R. §§ 404.1521(b) (1985), 416.921(b) (1991). To be severe, an impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909 (1980). An ALJ must consider all impairments whether severe or nonsevere. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).

Although the ALJ focused on Beard's mental impairments in the decision, he considered Beard's spinal impairments and scoliosis diagnosis as detailed in records from Bloomingdale Radiology (Exhibit 8F; Tr. 493–94), Tower Radiology (Exhibit 16F; Tr. 622–28), Elias Dakwar, M.D. (Exhibit 18F; Tr. 635–40), G.E. Vega, M.D.

2

(Exhibit 11F; Tr. 524–27), and TGH Neurosurgery (Exhibit 13F; Tr. 530–76). *See* Tr. 23 (citing those exhibits). The ALJ explained:

> The medical evidence of record indicates that the claimant has been diagnosed with scoliosis. No limiting factors have been noted in regards to this condition. The claimant's symptoms have been treated with conservative medical management including prescription medication and various treatment notes indicate that these conditions are generally controlled. Physical examinations revealed the claimant to have no tenderness of the low back, normal movement of all extremities, normal deep tendon reflexes, good balance, a normal gait and station, and no evidence of myelopathy. Surgical intervention has not been advised at this time.

Tr. 23 (internal citations omitted). Later, in explaining the RFC, the ALJ gave "great weight" to the opinion of state-agency consultant Bettye Stanley, D.O., Tr. 27, who opined that Beard's physical conditions appear nonsevere based on records through October 24, 2014, which did not include later evidence on spinal impairments but did include Beard's own statements, Tr. 125–27, 129.

Substantial evidence supports the ALJ's findings that Beard's spinal impairments are nonsevere and warrant no limitations in the RFC. For substantial evidence to support those findings, see Tr. 65–68 (Beard's testimony that her back pain comes and goes a few times a week and is eased by an ice pack, a heating pad, "Icy Hot," and Aleve), Tr. 329–36 (Beard's report identifying only mental impairments as those limiting her ability to work and explaining that she lives alone in a house, walks 30-minutes daily, prepares meals, does laundry, cleans the house, vacuums, mops, sweeps, enjoys walking and swimming, and regularly attends church), Tr. 526 (doctor's findings that Beard has "a satisfactory erect posture," her gait reveals "no antalgic component," she can "walk on her tip toes and heels satisfactor[il]y," she can "perform a full squat," she has "no sensory deficit" in her lower extremities, she has "no motor deficit," and she had a negative straight-leg-raise test), Tr. 537 (doctor's notes that Beard reported "a remote history of back pain many years ago that resolved in the interim," has no "localized tenderness on deep palpation," has a "full range of

3

back movement," denies "weakness, numbness, and paresthesias," and does not want surgery to correct degenerative scoliosis), Tr. 547–49 (Beard's statements that she can take care of herself without increased pain, can manage "light to medium weights if they are conveniently positioned," can walk half a mile, can sit in any chair for as long as she likes, can stand for a half an hour, and sleeps well), Tr. 585–87 (doctor's notes at visit to review MRI results documenting no physical examination findings to support Beard's complaints), Tr. 637 (doctor's findings that Beard has "good coronal and sagittal balance," she has no "tenderness to palpation of her lower back," her "[d]eep tendon reflexes are 2+, symmetric throughout," and there is no "evidence of any myelopathy"), and Tr. 638 (doctor's observation, "[T]here may be mild curve progression over time but nothing significant and there is no rush to her surgery. She is in agreement with this.").

Beard emphasizes evidence that certainly could have supported findings that her spinal impairments are severe and warrant exertional limitations in the RFC. Doc. 16 at 17–21. But a court may not decide facts anew, reweigh evidence, or substitute its judgment for the ALJ's, *see Moore*, 405 F.3d at 1211; it is enough that substantial evidence—"such relevant evidence as a reasonable person would accept as adequate to support a conclusion," *id.*—supports the ALJ's findings, *see Martin*, 894 F.2d at 1529.

Beard summarily observes, "Nor did the ALJ address Plaintiff's psoriatic arthritis of the hands and feet." Doc. 16 at 17 (citing Tr. 595; *see also* Tr. 68, 599, 600, 607, 613, 650, 656, 662, 669). Beard is correct but points to no related work limitation and therefore shows no harm. *See generally* Doc. 16 at 17. At the hearing, Beard testified the psoriatic arthritis affects her only when she is "trying to peel some potatoes or something like that" and redirected focus to her back. Tr. 68.

Second, Beard argues substantial evidence does not support the RFC because the ALJ erroneously rejected or failed to discuss opinions of Drs. Jeffrey Merin, Amado Suarez, and G.E. Vega. Doc. 16 at 21–23.

An ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c) (2012). A "medical opinion" is a statement from an "acceptable medical source" that reflects judgment about the nature and severity of a claimant's impairment. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2012). An opinion on an issue that is dispositive of a case, such as whether a claimant is disabled or can work, is not a medical opinion because it is on an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d) (2012).

An ALJ must state with particularity the weight given to each medical opinion and the reasons for that weight. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Unless the ALJ gives a treating source's opinion controlling weight, the ALJ will consider several factors to decide the weight to give a medical opinion: examining relationship, treatment relationship, supportability, consistency, specialization, and any other relevant factor. 20 C.F.R. §§ 404.1527(c), 416.927(c) (2012). An ALJ need not explicitly address each factor. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

The ALJ did not err in rejecting or failing to discuss opinions of Drs. Jeffrey Merin, Amado Suarez, and G.E. Vega. The ALJ stated the weight he was giving Dr. Merin's and Dr. Vega's opinions, explained the reasons for the weight, and substantial evidence supports the reasons. The ALJ did not state the weight he was giving to Dr. Suarez's opinion, but he did not have to because the opinion—agreement with Dr. Merin that Beard should consider part-time employment with a job coach, Tr. 503, 632—is a statement on a matter reserved to the Commissioner and therefore is not a medical opinion.[1] *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (2012).

---

[1]Moreover, as the Commissioner observes, Doc. 19 at 14, the ALJ specifically mentioned Dr. Merin's statement that Beard had a poor prognosis for fulltime work, gave the statement little weight, and found Beard can perform substantial gainful activity, Tr. 27–28, thereby implicitly and obviously rejecting Dr. Suarez's agreement with Dr. Merin. An ALJ's finding may be implicit if obvious to the reviewing court. *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983).

The ALJ explained he was giving Dr. Merin's opinion "little weight" because the opinion was based on a one-time evaluation and was inconsistent with evidence of "consistently normal mental status exams and improvement of symptoms." Tr. 27–28. For substantial evidence to support those underlying findings, see Tr 495–503 (record of one-time evaluation), Tr. 497 (Dr. Merin's mental status evaluation finding that Beard was oriented in all spheres; there was no evidence she had a formal thought disorder, manic condition, or hyperactivity; she was informally dressed and adequately groomed; she remained cooperative and compliant throughout the evaluation; she put forth good levels of effort and motivation; she was friendly, accommodating, and "non-defensive"; her communication skills were within normal limits and generally consistent with her intellectual capacities; her affect was flat, but she described her mood as "better" and "less anxious"; and there was no evidence that she posed an imminent threat to herself or others); and Tr. 677–79, 688–95, 699–713 (records of consistent and generally normal mental status examinations).

The ALJ explained he was giving Dr. Vega's opinion (that Beard should not lift or push more than 15 pounds) "no weight" because the opinion was based on a one-time examination and "is not supported by the longitudinal records or by Dr. Vega's own examination findings, which revealed the claimant to have a normal gait and station, normal sensation, no motor deficits, and negative straight leg raises." Tr. 28. For substantial evidence to support those underlying findings, see Tr. 525–27 (record of one-time examination) and Tr. 526 (Dr. Vega's findings that Beard had "a normal gait and station, normal sensation, no motor deficits, and negative straight leg raises").

Third, Beard argues the ALJ erred in rejecting her allegations. Doc. 16 at 24–25.

An ALJ undertakes a two-step process to evaluate a claimant's symptoms. Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304.[2] For the first step, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms. *Id*. For the second step, the ALJ evaluates the "intensity and persistence" of the claimant's symptoms and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities. *Id*. In undertaking the evaluation, the ALJ will consider factors that include evidence of daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment other than medication for relief of pain or other symptoms; and measures taken to relieve pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011).

The ALJ did not err in finding Beard's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 26. The ALJ explained,

> The claimant alleges that she experiences debilitating anxiety and depression that prevent her from working. However, the medical evidence of record reveals that treatment for the mental health condition has been routine and has consisted of primarily conservative medication management with few if any recommendations for more aggressive treatment options that would be expected for limitations of the degree alleged. Though the claimant suffered an acute psychological breakdown in 2014 with reports of some psychosis, records reveal that

---

[2] SSR 16-3p, which provides guidance on the evaluation of symptoms and rescinds SSR 96-7p, became effective on March 28, 2016. The SSA expects federal courts to review a final decision using the rules in effect when the SSA issued the decision. SSR 16-3p at n. 27. Because the ALJ issued the decision on November 1, 2016, Tr. 20–30, SSR 16-3p applies here. SSR 16-3p did not alter the methodology for evaluating symptoms; rather, SSR 16-3p eliminated use of the term "credibility" because "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p.

7

> her symptoms were successfully treated and that her condition stabilized with medications. Continued treatment records reveal that the claimant consistently exhibited normal mental status examination findings and that she has reported good results from her treatment regimen. She has experienced no recurrent episodes of psychosis and has required no additional inpatient admissions. The claimant has successfully engaged in work activity in recent months and participates in a variety of activities of daily living. These factors belie her claims of total disability and are indicative of an individual capable of working within the parameters [of the RFC].
>
> Though these inconsistencies reflect negatively on the claimant's credibility, the undersigned has given the claimant's assertions all due consideration and has addressed her limitations in the claimant's [RFC]. The claimant's conditions are not so debilitating that they prevent her from performing work within the [RFC] … which provides for restrictions regarding concentration, adaptation, and social interaction to accommodate the claimant's conditions.

Tr. 27.

Beard argues the ALJ's failure to consider her spinal impairments undermines his assessment of her pain. Doc. 16 at 24. Because the ALJ considered her spinal impairments (as discussed), that argument fails.

Beard argues the ALJ erroneously applied a "total disability" standard based on part-time work and performance of basic living activities despite that she "would be disabled *even if* able to perform light exertional activity." Doc. 16 at 24 (emphasis in original). As the Commissioner observes, however, the ALJ "noted the relevant regulations, set out the two-step process for considering a claimant's symptoms, discussed [Beard's] subjective statements, and articulated sufficient reasons for discounting [her] subjective statements." Doc. 19 at 18 (citing Tr. 25–28). The ALJ appropriately considered factors that included her daily activities. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2011).

Beard argues substantial evidence does not support the ALJ's finding that her mental health treatment was "routine," pointing to prescriptions for psychotropic medications, reports that antidepressants had been ineffective and treatment is not

optimal, and consistent presentation of depression and anxiety. Doc. 16 at 24–25. Although the ALJ described Beard's condition as "routine," he qualified the adjective with explanations that her condition has been "primarily" treated with "conservative medication management with few if any recommendations for more aggressive treatment options that would be expected for limitations of the degree alleged," acknowledged she had suffered "an acute psychological breakdown in 2014 with reports of some psychosis," and found "her symptoms were successfully treated and that her condition stabilized with medications." Tr. 27. Substantial evidence supports those underlying findings. See, for example, Tr. 488–92 (doctor's reports indicating stability after acute psychiatric breakdown), Tr. 688–97 (doctor's reports indicating continuation of medication management).

Fourth and finally, Beard argues an award of benefits is the appropriate remedy. Doc. 16 at 25. Because reversal is unwarranted, the Court need not address that argument.

The Court **affirms** the Commissioner's decision and **directs** the clerk to enter judgment for the Commissioner and against Judith Beard and close the file.

**Ordered** in Jacksonville, Florida, on March 29, 2019.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c:    Counsel of Record

9